UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| In re | Case No. 97-04178 - WRS |
|---|---|
| | Chapter 13 |

FRANKIE ALLEN BARNES

    Debtor,

FRANKIE ALLEN BARNES,

    Plaintiff,                                               Adv. Pro. No. 04-1035 - WRS

v.

FRED SAWYER

    Defendant.

## MEMORANDUM DECISION

This Adversary Proceeding came before the court for trial on April 6, 2005. Plaintiff Frankie Allen Barnes, the Debtor in the underlying Chapter 13 bankruptcy case, was present in person and by counsel C.H. Espy, Jr. Defendant Fred Sawyer[1] was present in person and by counsel Bowdy J. Brown and Wade H. Baxley. Barnes seeks declaratory and injunctive relief to prevent Sawyer from taking action to foreclose his judgment lien on Barnes' residence.

### I. FACTS

On July 23, 1996, Sawyer obtained a money judgment against Barnes in the amount of $13,213.84 in the Circuit Court for Houston County, Alabama. Barnes recorded his judgment

---

[1] The undersigned is not related to Defendant Fred Sawyer.

with the Judge of Probate, in accordance with Alabama law, on August 5, 1996. Sawyer immediately proceeded with post-judgment discovery in an effort to collect his judgment.

The money judgment is based upon a promissory note Barnes had executed in an effort to restructure his liability to Sawyer for delinquent rent. Sawyer does not make any claim that Barnes had attempted to defraud him or that there is any other basis for nondischargeability under 11 U.S.C. § 1328(a).

On August 22, 1997, Barnes filed a petition in bankruptcy in this Court under Chapter 13 of the Bankruptcy Code. Sawyer was listed in the Schedules as an unsecured creditor and in the mailing matrix, however, his address was indicated in care of "Lewis, Brackin & Flowers, P.O. Box 1165, Dothan, Alabama 36302." Sawyer was represented by Dothan lawyer Harry Hall who was then an associate at the law firm of Lewis, Brackin & Flowers. Barnes' bankruptcy schedules indicate the correct mailing address for the law firm. Barnes filed a "Suggestion of Bankruptcy" in the civil action in Houston County and served a copy on Hall.[2] In a deposition taken January 10, 2005, Hall testified that he received the Suggestion of Bankruptcy. He further testified that he did not have any recollection of having received a Notice of Commencement of Case[3] or other notices from this Court related to Barnes' Chapter 13 bankruptcy filing.

---

[2] The purpose of a "Suggestion of Bankruptcy" is to provide actual notice to the trial court and other parties when a party files bankruptcy. While neither the Bankruptcy Code nor the Bankruptcy Rules require this, it is a good practice to file a Suggestion of Bankruptcy in every pending civil action to which a debtor is a party. Indeed, in this case, the filing of the Suggestion of Bankruptcy gave the Creditor actual notice of the bankruptcy proceeding and saved the Debtor his discharge.

[3] A Notice of Commencement of Case is the official notice sent to creditors advising them of the bankruptcy filings. These notices usually provide notice of the date and place of the Meeting of Creditors and notice of the claims bar date, if one is applicable. These notices are sent to the creditors at the addresses provided by the Debtor.

Sawyer lives in Blakely, Georgia and has lived there for many years. Barnes testified that he knew where Sawyer lived and had done business with him in Blakely, Georgia several years earlier. Sawyer testified that to comply with the requirements imposed by the Dial 911 emergency system, his mailing address had changed, but his physical location had not. While Barnes may not have had Sawyer's mailing address at hand, he could have easily discovered it with only a minimum of effort.

This Court's bankruptcy case file, that is the file in Case No. 97-4178, indicates that a "Notice of Commencement of Case" together with a Chapter 13 Plan Summary was mailed to all creditors on the mailing matrix on August 27, 1997. The Court's record indicates that Sawyer was sent these documents, however, they would have been sent to the address provided on the mailing matrix filed by Barnes, which was Hall's office. Hall and Sawyer ceased their efforts to collect the judgment during the pendency of Barnes' Chapter 13 bankruptcy case. Sawyer did not file a Proof of Claim or take any action in the Chapter 13 bankruptcy case. Based upon the facts and circumstances shown in this case, the Court finds that Sawyer had actual knowledge of the filing of Barnes' Chapter 13 bankruptcy case through his attorney Harry Hall.

Barnes listed Sawyer in his bankruptcy schedules as an unsecured creditor. Barnes acknowledged Sawyer's judgment lien but took the position that because the value of his residence was less than the amount of liens senior the judgment lien of Sawyer, the judgment did not attach. Barnes' Plan provided for the payment of a 15% dividend to unsecured creditors. Sawyer did not file a proof of claim in the bankruptcy case and for that reason did not receive any payments from the Chapter 13 Trustee.

On September 25, 2002, the Court granted Barnes a discharge, pursuant to 11 U.S.C. § 1328(a), finding that Barnes had completed his plan. (Case No. 97-4178, Doc. 30, 31). The Court's record indicates that Barnes did not move to avoid Sawyer's judgment lien pursuant to 11 U.S.C. § 522(f), nor did he seek to value his residence pursuant to Rule 3012, Fed. R. Bankr. P.

On September 27, 2001, Barnes filed an Adversary Proceeding against Fred Sawyer and the Trust Company Bank, seeking a determination that their judgment liens did not encumber Barnes' residence. (AP 01-202). Trust Company Bank consented to a judgment in favor of Barnes, conceding that its judgment lien did not attach to the residence. Barnes dismissed Sawyer. Barnes sued Sawyer again in 2002, filing Adversary Proceeding 02-1112. While a considerable quantity of paper was churned, Barnes moved to dismiss his second suit, without prejudice, on February 27, 2003. (AP 02-1112, Doc. 12). Barnes' motion to dismiss his complaint in Adversary Proceeding 02-1112, contained the following statement, which is of at least passing interest:

> At the time of filing of the Complaint which initiated the instant adversary proceeding it was the Debtor's belief [that] the value of his assets, considering balances owed under mortgages and liens as of the Petition date, were not such to which the Defendant's pre-petition judgment should remain attached upon successful completion of the Debtor's Chapter 13 Plan and entry of Discharge. However, upon further analysis of the value of the Debtor's assets in the most favorable light to him as of the Petition date it does appear the Debtor had excess unencumbered, and non-

Case 04-01035    Doc 22    Filed 06/30/05    Entered 06/30/05 07:16:24    Desc Main
Document      Page 4 of 19

exempt, equity to which the Defendant's pre-petition judgment could remain attached.[4]

(AP 02-1112, Doc. 12). On May 6, 2003, this Court dismissed the second Adversary Proceeding, without prejudice. (AP 02-1112, Doc. 15).

Barnes sued Sawyer a third time bringing the instant Adversary Proceeding. It appears that Barnes concedes, in his complaint, that Sawyer's judgment lien attached, at least in part, to the non-exempt equity in his residence. However, Barnes reversed positions again by the time of trial, contending that Sawyer's judgment lien was completely underwater, meaning that it did not attach to anything and that Barnes' personal liability had discharged upon completion of his Chapter 13 Plan.

Barnes owns a residence in Gordon, Alabama. Sawyer contends that the property has a fair market value of $47,500.00 as of August 22, 1997, the date Barnes filed his petition in bankruptcy. Sawyer offered a real estate appraisal in support. (Def.'s Ex. 10). Barnes argued that the property has a value of $38,700.00, citing the real estate tax appraisal. The Court, having heard the evidence, finds that the fair market value of the property as of August 22, 1997, was $47,500.00. In addition, Barnes owns an additional vacant lot with a fair market value of $1,200.00. The total value of the real property is $48,700.00.

Barnes' real property is encumbered by a first mortgage in favor of United Companies Lending Corporation in the amount of $21,197.97. The mortgage was recorded on January 12, 1993. (Def.'s Ex. 1). The Internal Revenue Service has a Federal Tax Lien in the amount of

---

[4] This statement is inconsistent with the position taken by Barnes in this Adversary Proceeding, where he contends that there is no equity in his residence.

$10,193.62, as of the date of the petition. The Federal Tax Lien was recorded on August 11, 1995. (Def.'s Ex. 3). Trust Company Bank has a judgment lien in the amount of $1,701.61, which was recorded on October 5, 1990.

If we start with a fair market value for the real estate of $48,700.00, and deduct the total amount of liens and encumbrances which are senior to Sawyer's judgment lien, in the amount of $33,093.20,[5] we are left with a difference of $15,606.80. If we next deduct Barnes' homestead exemption, in the amount of $5,000.00,[6] we are left with net equity in the amount of $10,606.81. Therefore, as of the time Barnes filed his petition in bankruptcy, Sawyer's judgment lien was secured, to the extent of $10,606.80 and unsecured for the balance.

## II. ISSUES

The Court will consider the following questions:

1. Whether Barnes' personal liability to Sawyer was discharged pursuant to the order of discharge entered in Barnes' Chapter 13 case?

---

[5] The Court notes an inconsistency here regarding the judgment lien of Trust Company Bank. As that judgment lien was avoided by this Court's judgment entered in Adversary Proceeding 01-202, it would appear that the Trust Company Bank judgment should not be taken into account for purposes of determining whether Sawyer's judgment lien attached to Barnes' residence. On the other hand, as the Trust Company Bank judgment lien predates Sawyer's judgment lien, Barnes' contention that it should be counted is not without logic. This inconsistency is resolved in favor of Barnes by taking the lien into account here and treating it as an encumbrance senior to Sawyer's judgment lien.

[6] Barnes is entitled, as a matter of Alabama law, to a homestead exemption in the amount of $5,000.00. Ala. Code § 6-10-2. Barnes made a proper claim of exemption in his Schedules. (Case No. 97-4178, Doc. 1, Schedule C).

2. Finding that Barnes' personal liability to Sawyer was discharged, may Sawyer nevertheless foreclose his judgment lien upon Barnes' residence?

### III.  CONCLUSIONS OF LAW

This is an adversary proceeding seeking declaratory relief as to the effect of a discharge and to determine the extent and priority of a judgment lien upon residential real property.  This Court has jurisdiction to hear this Adversary Proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding, within the meaning of 28 U.S.C. § 157(b)(2)(I) and (K).

#### A.  Discharge of Personal Liability

The Court will first consider whether the Debtor's liability was discharged.  This question will be analyzed in three parts.  First, the Court will review the pertinent provisions of the Bankruptcy Code and the Bankruptcy Rules.  Second, the Court will consider whether the Debtor strictly complied with all of the applicable rules.  Finding that the Debtor did not, the Court will third consider whether, consistent with the due process clause of the Constitution of the United States, the debt owed to Sawyer was discharged.  For the reasons set forth below, the Court finds that the Debtor's personal liability was discharged.

##### 1.  Review of pertinent Bankruptcy Code and Rules provisions

Review of the Bankruptcy Code and the related Bankruptcy Rules reveals a number of provisions which deal with listing creditors on schedules, noticing and discharges. We will begin this review with 11 U.S.C.§ 1328(a), which provides as follows:

> As soon as practicable after completion by the debtor of all
> payments under the plan . . . the court shall grant the debtor a
> discharge of all debts provided for by the plan or disallowed under
> section 502 of this title, except any debt–
>
>> (1) provided for under section 1322(b)(5) of this title;
>> (2) of the kind specified in paragraph (5), (8), or (9) of
> section 523(a) of this title; or
>> (3) for restitution, for a criminal fine, included in a sentence
> on the debtor's conviction of a crime.

As the debt owed to Sawyer was one for a judgment on a promissory note, it is readily apparent that none of the enumerated exceptions under § 1328(a) apply. Rather, this question turns on whether the debt owed to Sawyer was "provided for" under the Plan.

Neither the Code nor the Rules purport to describe when or how a debt is "provided for" under a Chapter 13 Plan. It would appear that for a debt to be provided for under a plan, the creditor should have, at a minimum, either notice or actual knowledge of the bankruptcy filing.

Section 342(a) of the Bankruptcy Code provides as follows:

> There shall be given such notice as is appropriate, including notice
> to any holder of a community claim, of an order for relief in a case
> under this title.

The Bankruptcy Rules provide an elaborate scheme for giving notice. The following is a catalogue of rules which are pertinent here.

1. Rule 1007 provides that, in a voluntary case, "the debtor shall file with the petition a list containing the name and address of each creditor unless the petition is accompanied by a schedule of liabilities."

-8-

2. Official Form 6, as prescribed by the Judicial Conference of the United States, calls for debtors to supply each "CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER." (emphasis in original).

3. Rule 2002(a) requires that 20 days notice of the following events given to all creditors: the meeting of creditors, Rule 2002(a)(1); the time to accept or reject a modification of a plan, Rule 2002(a)(5), the time fixed for filing proof of claims pursuant to Rule 3003(c), Rule 2002(a)(7).

4. Rule 2002(b) requires that 25 days notice of hearing on confirmation of a Chapter 13 Plan be given to all creditors.

5. Rule 2002(o) requires that notice of commencement of the case be sent within 20 days to all creditors.

6. Rule 3015(d) provides that the Chapter 13 Plan, or a summary of the Plan, shall be mailed to all creditors.

### 2. Barnes did not strictly comply with the pertinent rules

The Court will first consider the question of whether Barnes strictly complied with all of the pertinent Bankruptcy Rules in this case. To state the question more precisely, whether Barnes properly scheduled Sawyer, according to Rule 1007, Fed. R. Bankr. P., where he listed only his lawyer's address and not Sawyer's address. Rule 1007(a) provides, in part, that: "In a voluntary case, the debtor shall file with the petition a list containing the name and address of each creditor unless the petition is accompanied by a schedule of liabilities." Moreover, the form for the schedule of liabilities prescribed by the Judicial Conference of the United States, calls for the

"Creditor's Name, mailing address including zip code, and account number." See, Official Bankruptcy Form 6. Listing an attorney's name and address does not meet the requirements of Rule 1007. Moreover, courts which have considered this question have found that listing an attorney but not the creditor himself, does not comply with the rules. Carpet Services, Inc., v. Hutchinson (In re: Hutchinson), 187 B.R. 533, 536 (Bankr. S.D. Tex. 1995); In re: Szczepanik, 146 B.R. 905, 912 (Bankr. E.D. N.Y. 1992); In re: Meek v. Sharp (In re: Meek), 126 B.R. 1021 (Bankr. E.D. Ark. 1991). Therefore, the Debtor did not comply with the requirements of Rule 1007 as he listed Sawyer in the Schedules at an address in care of his lawyer Harry Hall and did not list Sawyer's address.

### 3. A debt is discharged provided that the creditor is given adequate notice

If a creditor in a case under Chapter 13 is not provided any notice of a bankruptcy proceeding, it follows that the debt owed is not discharged. Southtrust Bankcard Ctr. v. Curenton (In re: Curenton), 205 B.R. 967, 970-71 (Bankr. M.D. Ala. 1995). See also, City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953)(creditor in railroad reorganization case under the Bankruptcy Act not discharged where no notice was provided). On the other hand, if a debtor provides letter perfect notice to a creditor, it follows that the debt is discharged. A problem arises when the Debtor provides some notice to his creditor, albeit notice which does not strictly comply with the pertinent Bankruptcy Rules.

-10-

The United States Court of Appeals for the Eleventh Circuit has handed down two decisions on this point. In Byrd v. Alton (In re: Alton), 837 F.2d 457 (11th Cir. 1988), a case involving an individual debtor under Chapter 11, notice of a bankruptcy filing sent to creditor's lawyer was held sufficient notice to discharge the indebtedness owed to the creditor because the creditor was found to have actual knowledge of the bankruptcy case. In Spring Valley Farms, Inc. v. Crow (In re: Spring Valley Farms, Inc.), 863 F.2d 832 (11th Cir. 1989), a Chapter 11 case involving corporate debtors, the Court held, under the facts of that case, that notice of a bankruptcy filing sent to a creditor's lawyer was not sufficient because the creditors did not have notice of the claims bar date and the indebtedness was not discharged. See also, Chanute Production Credit Association v. Schicke (In re: Schicke), 290 B.R. 792, 802-03 (B.A.P. 10th Cir. 2003)(listing creditor in care of its lawyer, while not in strict compliance with Rule 1007, nevertheless provided adequate notice pursuant to § 342(a)). Therefore, whether notice of a bankruptcy filing provided to a creditor's lawyer, but not to the creditor himself, is sufficient, turns upon the facts and circumstances of each particular case.

In Alton, the debtor had been sued by a creditor who was represented by counsel. When Alton filed bankruptcy, he did not list Byrd as a creditor in his schedules. He did however, provide notice of the bankruptcy filing to Byrd's lawyer. The Court in Alton stated that:

> The statutory language clearly contemplates that mere knowledge
> of a pending bankruptcy proceeding is sufficient to bar the claim of
> a creditor who took no action, whether or not that creditor received
> official notice from the court of various pertinent dates. This
> furthers the bankruptcy policy of affording a "fresh start" to the
> debtor by preventing a creditor, who knew of a proceeding but who
> did not receive formal notification, from standing back, allowing

-11-

> the bankruptcy action to proceed without adjudication of his claim,
> and then asserting that the debt owed him is undischargeable.

Alton at 460.

In Spring Valley Farms, several individuals who were neighbors of a chicken processing plant in Alabama brought suit seeking damages for nuisance. The plaintiffs were not given notice of the bankruptcy proceedings. However, one of Spring Valley's lawyers wrote a letter to the attorney representing the plaintiffs, advising them of the pendency of the bankruptcy, which had been filed in North Carolina. Under these facts, the Court in Spring Valley Farms found that "in the present case plaintiffs were likewise not provided mandatory statutory notice and, like New York City, failed to file a timely notice of claim. As did the creditor in City of New York, plaintiffs seek an exception from the bankruptcy court's final discharge order because they never received notice of the bar date for filing a proof of claim." Spring Valley Farms, at 835 (citing City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953)).

One Court has described the state of the law in this Circuit as follows:

> [T]he Eleventh Circuit has recognized that a higher standard for
> satisfying due process applies to corporate Chapter 11 cases than to
> cases involving individual debtors of any chapter: corporate
> Chapter 11 cases require notice of the bar date for filing claims,
> Spring Valley, 863 F.2d at 835, while cases involving individual
> debtors of any chapter require only notice of the case generally.
> Alton, 837 F.2d at 460.

In re: Ford Business Forms, Inc., 180 B.R. 294, 296 (S.D. Fla. 1994); see also, Gencor Industries v. CMI Terex Corporation, (In re: Gencor Industries, Inc.), 298 B.R. 902, 914 (Bankr. M.D. Fla.

-12-

2003)(Spring Valley Farms standard applied in corporate Chapter 11 case); Broussard v. First Americn Health Care of Georgia, Inc., (In re: First American Health Care of Georgia, Inc.), 220 B.R. 720, 724 (Bankr. S.D. Ga. 1998)(notice of bar date sent to creditor's lawyer sufficient under facts of this case); In re: L. Meyer & Son Seafood Corp., 188 B.R. 315, 318-19 (Bankr. S.D. Fla. 1995)(Alton standard applied in case under Chapter 7); In re: Ray Brooks Machinery, Inc., 113 B.R. 56 (Bankr. M.D. Ala. 1989)(Alton standard applies in case under Chapter 7).

In a case handed down in 1994, this Court denied a debtor a discharge who had given notice of a bankruptcy filing to a lawyer but not the creditor. Cheriogotis v. White (In re: Cheriogotis), 188 B.R. 996 (Bankr. M.D. Ala. 1994). In Cheriogotis, creditor brought suit against the debtor for wrongful death. The parties negotiated a consent judgment in the amount of $2,000,000.00. The creditor, the estate of the decedent, in that case hired attorney Sharon Yates to represent it. Yates in turn associated Samual Cherry to assist with the suit. After judgment, Cherry retained another lawyer, Joel Nomberg, to bring suit to set aside a fraudulent conveyance, in an effort to collect the $2,000,000.00 judgment. The personal representative of the estate was not aware of either the fraudulent conveyance suit, or Nomberg's representation, until she read about it in a newspaper. The personal representative fired Cherry in May of 1993. In November of the same year, Cheriogotis filed a petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. The only notice of the bankruptcy case was sent to Nomberg. As Nomberg was not then representing the estate, this Court held that notice was not sufficient, citing a decision from a Bankruptcy Court in Arkansas which held that notice sent to an attorney who no longer represented a creditor was insufficient. Cheriogotis, at 1000 (citing In re: Meek, 126 B.R. 1021 (Bankr. E.D. Ark. 1991)).

-13-

In a case handed down in 1995, this Court held that notice of a bankruptcy proceeding sent to a separate but affiliated entity was not sufficient. Southtrust Bankcard Ctr. v. Curenton (In re: Curenton), 205 B.R. 967 (Bankr. M.D. 1995). This Court in Curenton rejected the claim that because notice is not required by the terms of § 1328, that the failure to give notice did not give rise to an exception to discharge. See also, In re: Scott, 119 B.R. 818 (Bankr. M.D. Ala. 1990)(Bank's unsecured deficiency claim not discharged because it had not been given notice of Chapter 13 bankruptcy filing).

In the instant proceeding, Sawyer was in hot pursuit of the Debtor, attempting to collect a money judgment which had been recently entered in Houston County, Alabama at the time of the bankruptcy filing. Collection efforts on the judgment ceased immediately upon the filing of the bankruptcy petition. Sawyer waited for five years, while the Chapter 13 case played itself out. Upon entry of the discharge, Sawyer proceeded to foreclose his judgment lien upon Barnes' residence. Harry Hall, Sawyer's lawyer, testified that he received notice of the bankruptcy filing and further testified that he made Sawyer aware of it. Sawyer's claim that he did not have knowledge of Barnes' bankruptcy filing is belied by Hall's testimony and the five year hiatus in his collection efforts. To credit Sawyer's claim that he was not aware of the bankruptcy filing, one would have to believe first, that, for no good reason, he voluntarily stayed collection of his judgment for five years; and second, that this five year hiatus just happened to coincide with the pendency of Barnes' Chapter 13 bankruptcy filing. The Court rejects Sawyer's claim that he did not know that Barnes filed bankruptcy. Based upon the facts and circumstances of this Adversary Proceeding, the Court finds that adequate notice was provided and that for this reason, the debt due Sawyer was discharged in Barnes' bankruptcy proceeding.

## B. THE EFFECT OF BARNS' DISCHARGE IN BANKRUPTCY UPON SAWYER'S JUDGMENT LIEN

The next question is: what effect did the discharge have upon Sawyer's judgment? This question should be analyzed in two parts. The first part concerns Barnes' personal, or <u>in personam</u>, liability. The second part concerns the <u>in rem</u> liability of Barnes' property, to the extent that the judgment lien attached prior to the date of the petition.

### 1. Barnes' personal liability on the judgment is discharged

The first part of this question is answered by 11 U.S.C. § 524(a)(1), which provides that: "a discharge in a case under this title–(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . 1328 of this title." To put the matter plainly, Barnes no longer owes Sawyer on the judgment and Sawyer cannot take any action to collect the judgment, from Barnes or from Barnes' property, except as described in more detail below.

### 2. Sawyer may foreclose his judgment lien on Barnes' residence

The second part of this question deals with the <u>in rem</u> liability of any of Barnes' property. As set forth in Part I above, the Court finds that there was net equity in the amount of $10,606.81 as of the date of the petition. Therefore, Sawyer's judgment lien had attached (to the

-15-

extent of $10,606.81) and remains attached to Barnes' residence. It is well established that a discharge in bankruptcy does not extinguish a lien on property which had attached as of the date of the petition. Long v. Bullard, 117 U.S. 617, 620-21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886); Southtrust Bank of Alabama, N.A. v. Thomas (In re: Thomas), 883 F.2d 991, 996-97 (11th Cir. 1989); Holloway v. Southeast Alabama Medical Center, (In re: Holloway), 254 B.R. 289, 292 (Bankr. M.D. Ala. 2000); see also, In re: Penrod, 50 F.3d 459, 461-62 (7th Cir. 1995); In re: Tarnow, 749 F.2d 464, 465 (7th Cir. 1984). "A bankruptcy discharge extinguishes only in personam claims against the debtor(s), but generally has no effect on an in rem claim against the debtor's property." Deutchman v. Internal Revenue Service (In re: Deutchman), 192 F.3d 457, 460 (4th Cir. 1995)(citing Cen-Pen Corporation v. Hanson (In re: Hanson), 58 F.3d 89, 92 (4th Cir. 1995)).

The Court notes that had Sawyer's lien not attached to Barnes' residence, as of the petition date, then the result here would be different. In other words, the result here turns on the value of the property and the amount of the senior liens. If the property had a value less than the total of the senior liens (plus Barnes' homestead exemption), then Sawyer's judgment lien would not have attached to Barnes' property.

### 3. Sawyer is entitled to future appreciation in the property

Barnes offers an alternative argument here. Barnes contends, in the alternative, that even if the Court determines that Sawyer's lien has attached to the property, that it is limited to the extent that it attached on the date of the petition. In other words, any future appreciation of the property should inure to the debtor rather than a judgment lien holder who is only partially

-16-

secured. This question is of more than academic interest as there was some indication that the present value of the property may be more than $70,000.00, a considerable increase in its value since the date of the petition.

The question of whether a partially secured judgment lien is limited as contended by Barnes, or if it encumbers future appreciation of the subject property was answered by the United States Supreme Court in <u>Dewsnup v. Timm</u>, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). In <u>Dewsnup</u>, the Supreme Court held that:

> The practical effect of petitioner's argument is to freeze the creditor's secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale. The increase would accrue to the benefit of the debtor, a result some of the parties describe as a "windfall."
>
> We think, however, that the creditor's lien stays with the real property until the foreclosure. That is, what was bargained for by the mortgagor and the mortgagee. The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor.

<u>Dewsnup v. Timm</u>, 502 U.S. 410, 417, 112 S.Ct. 773, 778, <u>see also</u>, <u>Wrenn v. American Cast Iron Pipe Company, (In re: Wrenn)</u>, 40 F.3d 1162 (11th Cir. 1994)(judgment lien survived discharge in bankruptcy); <u>Ogburn v. Southtrust Bank (In re: Ogburn)</u>, 212 B.R. 984 (Bankr. M.D. Ala. 1995)(judgment lien which attached to property prior to petition did not discharge, but property acquired postpetition is not encumbered by judgment lien); <u>cf</u>, <u>In re: Thomsen</u>, 181 B.R. 1013 (Bankr. M.D. Ga. 1995)(judgment lien did not attach to property with a value less than the amount owed on the first mortgage plus the debtor's exemptions).

-17-

The case at bar is a Chapter 13 bankruptcy, while <u>Dewsnup</u> was a case under Chapter 7. The Debtor in this case might have "provided for" Sawyer's secured claim in his Chapter 13 Plan. As Sawyer's judgment lien was only partially secured, Barnes could have provided in his Chapter 13 Plan for payment of the secured portion of the judgment, in full, while treating the remaining unsecured portion as an unsecured claim. 11 U.S.C. § 1322(b)(2). Instead, the Plan in the case at bar treated Sawyer's claim as unsecured. Moreover, Sawyer did not file a proof of claim in the Bankruptcy Court, he did not object to confirmation of the Plan and he did not make any effort to value his interest in the Debtor's property.[7] As Sawyer did not file a proof of claim, no distributions were made to him. As no action was taken in Barnes' Chapter 13 case, Sawyer's judgment lien survived in tact. <u>Southtrust Bank of Alabama, N.A. v. Thomas (In re: Thomas)</u>, 883 F.3d 991, 996-97; <u>In re: Tarnow</u>, 749 F.2d 464, 465; <u>In re: Holloway</u>, 254 B.R. 289, 292. Moreover, as no action was taken in the Chapter 13 case, there is no provision in Chapter 13 which would alter the outcome had this been a case under Chapter 7. For this reason, the rule of <u>Dewsnup</u> applies and therefore Sawyer is entitled to appreciation in the property subsequent to the filing of the Chapter 13 petition, to the extent of the amount of Sawyer's judgment, including accrued interest.

## VI. CONCLUSION

The Court finds that a debtor must list all of his creditors, by name and address. Scheduling a lawyer in lieu of a creditor does not strictly comply with the requirements of the

---

[7] Bankruptcy Rule 3012 provides that the Court may determine the value of a claim secured by a lien. Moreover, a debtor may, in a case under Chapter 13, modify the rights of a holder of a secured claim. 11 U.S.C. § 1322(b)(2).

Case 04-01035   Doc 22   Filed 06/30/05   Entered 06/30/05 07:16:24   Desc Main
Document      Page 18 of 19

pertinent Bankruptcy Rules. This, by itself, does not necessarily cost the debtor his discharge, however, he must show that adequate notice was given his creditors. Under the facts of this case, the Court finds that Sawyer had actual knowledge of this bankruptcy case and therefore that the debt due was discharged. However, the Court also found that the creditor's judgment lien attached to the Debtor's property prior to the time the petition in bankruptcy was filed. Applying the principles of <u>Dewsnup</u> and its progeny, the Court finds that Sawyer is entitled to future appreciation in the property. Therefore, Defendant Fred Sawyer is free to foreclose his judgment lien, in accordance with Alabama law, and obtain payment to the extent otherwise allowed by law.

Done this 29th day of June, 2005.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Collier H. Espy, Jr., Attorney for Plaintiff
   Bowdy J. Brown,
   Wade H. Baxley, Attorneys for Defendant